FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 16, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FELIX R.F.,<br><br>    Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No. 2:25-CV-03068-ACE<br><br>ORDER GRANTING PLAINTIFF'S MOTION IN PART<br><br>**ECF Nos. 12 & 17** |

**BEFORE THE COURT** is Plaintiff's Opening Brief and Defendant's Brief in response. ECF No. 12, 17. Attorney D. James Tree represents Plaintiff; Special Assistant United States Attorney David J. Burdett represents Defendant. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion in Part; **DENIES** Defendant's Motion; and **REMANDS** the matter to the Commissioner for an immediate calculation of benefits with respect to Plaintiff's childhood disability claim and **REMANDS** Plaintiff's adult disability claim to the Commissioner for additional proceedings.

## JURISDICTION

Plaintiff protectively filed an application for child disability benefits on May 24, 2019, alleging onset of disability on October 21, 2016. Tr. 177. The application was denied initially and upon reconsideration. Administrative Law Judge (ALJ) Joseph A. Rose held a hearing on April 12, 2021, and issued an

ORDER - 1

unfavorable decision on May 20, 2021. A civil action was then filed in this Court which resulted in a remand for additional proceedings on September 20, 2023. Tr. 936-951. A new ALJ, David Johnson, held an administrative hearing on February 20, 2025, Tr. 872-911, and issued an unfavorable decision on March 10, 2025, Tr. 838-860. Plaintiff filed this action for judicial review on May 20, 2025. ECF No. 1.

## STANDARD OF REVIEW

The ALJ is tasked with "determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1098; *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988).

ORDER - 2

# SEQUENTIAL EVALUATION PROCESS
## Childhood Disability

The Social Security Act provides that a child under 18 is "disabled" for purposes of SSI eligibility if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner follows a three-step sequential process in determining childhood disability: (1) whether the child is engaged in substantial gainful activity; (2) if not, whether the child has a medically determinable severe impairment; (3) and, if so, whether the child's severe impairment meets, medically equals, or functionally equals the severity of a set of criteria for an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924.

If the Commissioner determines at step three that the claimant has an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, the analysis ends there. If not, the Commissioner decides whether the child's impairment results in limitations that functionally equal a listing. 20 C.F.R. § 416.926a(a). In determining whether an impairment or combination of impairments functionally equal a listing, the Commissioner assesses the claimant's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

When evaluating the ability to function in each domain, the ALJ considers information that will help answer the following questions "about whether your impairment(s) affect your functioning and whether your activities are typical of other children your age who do not have impairments":

ORDER - 3

  (i) What activities are you able to perform?

  (ii) What activities are you not able to perform?

  (iii) Which of your activities are limited or restricted compared to other children your age who do not have impairments?

  (iv) Where do you have difficulty with your activities – at home, in childcare, at school, or in the community?

  (v) Do you have difficulty independently initiating, sustaining, or completing activities?

  (vi) What kind of help do you need to do your activities, how much help do you need, and how often do you need it?

20 C.F.R. § 416.926a(b)(2)(i)-(vi).

  The evaluation of functional equivalence begins "by considering the child's functioning without considering the domains or individual impairments." Title XVI: Determining Childhood Disability Under the Functional Equivalence Rule – The "Whole Child" Approach, SSR 08-1p, 2009 WL 396031 (Feb. 17, 2009). The rules provide that "[w]hen we evaluate your functioning and decide which domains may be affected by your impairment(s), we will look first at your activities and limitations and restrictions." *Id*. citing 20 C.F.R. § 416.926a(c). The rules instruct the Commissioner to:

> Look at information we have in your case record about how your functioning is affected during all your activities when we decide whether your impairment or combination of impairments functionally equals the listings. Your activities are everything you do at home, at school, and in your community.

*Id*. citing 20 C.F.R. § 416.926a(b). The severity of limitation in each affected functional domain is then considered. This technique is called the "Whole Child" approach.

///

ORDER - 4

**Adult Disability**

With respect to adults, the Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the claimant bears the burden of establishing a prima facie case of disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a significant number of jobs exist in the national economy which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497-1498 (9th Cir. 1984); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). If a claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**ADMINISTRATIVE DECISION**

On March 10, 2025, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. Tr. 838-860.

With respect to the childhood standard of disability, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the application date, May 24, 2019. Tr. 843. At step two, the ALJ determined Plaintiff suffered from the following severe impairment: Tourette's syndrome, anxiety disorder, depressive disorder, and ADHD. Tr. 843. The ALJ found at step three that the evidence of record demonstrated Plaintiff's impairments, although severe, did not meet, medically equal, or functionally equal the criteria of any of the listed impairments. Tr. 843-844. As to the six domains (functional equivalence), the ALJ concluded Plaintiff had less than a marked limitation in

ORDER - 5

acquiring and using information, less than a marked limitation in attending and completing tasks, less than a marked limitation interacting and relating with others, less than a marked limitation in moving about and manipulating objects, a marked limitation in caring for himself, and less than a marked limitation in health and physical well-being. Tr. 945. The ALJ thus determined Plaintiff's impairments resulted in only one marked limitation and no extreme limitations. Because Plaintiff did not have an impairment or combination of impairments that met or medically or functionally equaled the listings, it was determined that Plaintiff was not disabled prior to attaining age 18. Tr. 854.

Plaintiff attained age 18 in December 2024. Tr. 854. With respect to the adult standard of disability, the ALJ determined Plaintiff did not develop any new impairment or impairments since attaining age 18; he continued to have a severe impairment or combination of impairments but his impairments did not meet or medically equal the severity of one of the listed impairments; he had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with several nonexertional limitations (including a restriction to work that does not require more than occasional interaction with coworkers and supervisors); he had no past relevant work; and, based on the testimony of the vocational expert and considering Plaintiff age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including the jobs of auto-detailer, groundskeeper, and cleaner, industrial. Tr. 854-859.

Accordingly, the ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the May 24, 2019 disability application date, through the date of the ALJ's decision, March 10, 2025. Tr. 860.

///

///

ORDER - 6

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred in this case by (1) concluding at step five of the adult sequential evaluation process that he was not disabled despite an RFC restriction to work that does not require more than occasional interaction with coworkers and supervisors; (2) failing to properly assess the functional domains; (3) improperly assessing Plaintiff's subjective testimony, both before age 18 and after age 18; and (4) improperly assessing the medical and other opinion evidence of record. ECF No. 12 at 2-27.

**DISCUSSION**

**A.    Childhood Disability**

**1.    Step Three - - Functional Equivalence**

Plaintiff contends the ALJ erred by failing to properly assess the functional domains in this case. ECF No. 12 at 3-11. Defendant concedes that a remand is warranted but argues the testimony of the medical expert (David Peterson, Ph.D.) and the prior administrative medical findings of Michael Brown, Ph.D., Jim Fischer, M.D., Richard Borton, Ph.D., and Charles Wolfe, M.D., present conflicts in the medical opinion evidence that only the ALJ can resolve through additional proceedings. ECF No. 17 at 3-4.

To functionally equal a listing, a claimant's impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). A "marked limitation" in a domain results when the child's impairment "interferes seriously" with the ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(2). An "extreme limitation" in a domain results when the child's

///

ORDER - 7

1 | impairment interferes "very seriously" with his ability to independently initiate,
2 | sustain or complete activities. 20 C.F.R. § 416.926a(e)(3).

3 |     The ALJ concluded Plaintiff (1) had less than a marked limitation in acquiring and using information, (2) less than a marked limitation in attending and completing tasks, (3) less than a marked limitation interacting and relating with others, (4) less than a marked limitation in moving about and manipulating objects, (5) a marked limitation in caring for himself, and (6) less than a marked limitation in health and physical well-being. Tr. 945. Because the ALJ assessed a marked limitation in Domain 5 (caring for oneself), Plaintiff would functionally equal a listing if a marked or greater limitation was found in one of the remaining domains. The undersigned finds that substantial evidence supports a determination that Plaintiff had a marked limitation in at least one additional domain. *See infra*.

    At the outset, the undersigned notes the opinions of the medical professionals cited in Defendant's brief contradict each other and if each opinion was adopted in full, it would support a finding of functional equivalence based on a result of marked limitations in two domains: On September 19, 2019, Drs. Brown and Fischer determined Plaintiff had less than marked impairments in Domains 1 and 6, no limitation in Domains 3, 4, and 5, and a marked limitation in Domain 2, Tr. 83-84; on June 5, 2020, Drs. Borton and Wolfe found Plaintiff had less than a marked impairments in Domains 1, 2, 3, and 5 and no limitation in Domains 4 and 6, Tr. 94-95; and Dr. Peterson testified at the February 20, 2025 administrative hearing it was his opinion that Plaintiff had less than a marked impairment in Domains 1, 2, 3, 4, and 5, and a marked limitation in Domain 5, Tr. 884-888.

    The ALJ's assessment of the domains combined Domain 1 (acquiring and using information) and Domain 2 (attending and completing tasks), Tr. 852, and, as noted by Plaintiff, discussed only evidence from 2020 forward despite an alleged disability onset date of October 2016, ECF No. 12 at 3-6. Moreover, despite finding persuasive and adopting the state agency psychological consultants'

ORDER - 8

medical opinions, Tr. 853-854, the ALJ did not account for the September 19, 2019, reports of Drs. Brown and Fischer which found a marked impairment in Domain 2. Tr. 83-84.

In the domain of acquiring and using information (Domain 1), an ALJ considers "how well you acquire or learn information, and how well you use the information you have learned." 20 C.F.R. § 416.926a(g). A claimant may be limited in acquiring and using information if he (1) does not demonstrate understanding of words about space, size, or time; (2) cannot rhyme words or the sounds in words; (3) has difficulty recalling important things he learned in school yesterday; (4) has difficulty solving mathematics questions or computing arithmetic answers; or (5) talks only in short, simple sentences and has difficulty explaining what he means. 20 C.F.R. § 416.926a(g)(3)(i)-(v). In the domain of attending and completing tasks (Domain 2), an ALJ considers "how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities, including the pace at which you perform activities and the ease with which you change them." 20 C.F.R. § 416.926a(h). A claimant may be limited in attending and completing tasks if he (1) is easily startled, distracted, or overreactive to sounds, sights, movements, or touch; (2) is slow to focus on or fails to complete activities of interest to him; (3) repeatedly becomes sidetracked from his activities or frequently interrupts others; (4) is easily frustrated and gives up on tasks, including ones he is capable of completing; or (5) requires extra supervision to keep him engaged in an activity. 20 C.F.R. § 416.926a(h)(3)(i)-(v).

In addition to the findings of a marked impairment of attending and completing tasks by Drs. Brown and Fischer, Tr. 83-84, a marked finding in Domain 1 and Domain 2 is supported by the 2019 report of Plaintiff's teacher, *see* Tr. 215 (finding "obvious," "serious," and "very serious" problems in every subsection of Domain 1); Tr. 216 (finding numerous "serious" and "very serious" problems and that Plaintiff was easily distracted and would not complete

ORDER - 9

assignments with respect to Domain 2), and the March 2024 report of Inclusion Specialist Robyn Johnson, Tr. 1210-1212 (opining, with explanation, that Plaintiff had a marked impairment in Domain 1 and an extreme impairment in Domain 2).

Plaintiff's briefing provides the following further support for a conclusion that Plaintiff was at least markedly impaired in Domain 1 and Domain 2:

> [Plaintiff] had modified grading such that 77.5% and up was in the A bracket, 58.8% to 77.4% was in the B bracket, and 40% to 58.7% was in the C bracket. Tr. 763. Even so, in December 2020 he was failing his science class and not turning in assignments because he did not understand, was nervous and frustrated to sign on remotely, and was not asking for help. Tr. 719. In January 2021, he was falling behind in school (Tr. 725), and his mother testified in April 2021 it was unclear if he would go to the next grade (Tr. 70) . . . . [Plaintiff's] initial IEP was for reading and math and he was performing 2 years below level in reading. Tr. 278. In 2019, his team proposed 500 minutes of special education per week within general education (Tr. 313), which is close to a third of the total 1800 minutes (see Tr. 309). Despite modified grading criteria and getting pass/fail for math and reading that year (Tr. 306), he was failing reading in 2019 (Tr. 470) . . . . Later, he was permitted to pass some classes if he had a 40% in 2020 (Tr. 552) and 50% in 2023 (Tr. 1152) but was still failing (see Tr. 1149). In 9th grade, his reading passage comprehension was grade equivalent 3.9. Tr. 1165. In 12th grade, his reading comprehension was at grade level 5.6 and in the 4th percentile rank compared to peers. Tr. 1231, 1248. State literacy testing has always tested "Below" or "Well Below" grade level. Tr. 1232.
>
> …
>
> [T]he classroom observation found in 2016 he was on-task 53% (Tr. 282) and 22% by 2019 despite redirections, re-explanations, and teacher interactions (Tr. 289). In January 2020, teachers noted he needed work checked every 5 minutes, was easily distracted, and had difficulty staying on-task. Tr. 549. In 2021, he was distracted by YouTube when he should be in class. Tr. 725. In 2023, his history teacher found he was lethargic, uninterested, and lacked emotion and energy. Tr. 1149. Teachers were still reminding him to pay attention in 2024 (Tr. 1668) . . . . Providers also found he was fidgety (e.g., Tr. 414, 434, 450, 464, 479, 652), distracted (e.g., Tr. 434, 450, 472, 706, 1669, 1671), tangential (e.g., Tr. 1653, 1669), and his

ORDER - 10

attention was fair to decreased (e.g., Tr. 472, 692, 723, 1472, 1480, 1490, 1501, 1520).

ECF No. 12 at 4-6.  Defendant does not specifically challenge the foregoing evidence/argument presented by Plaintiff.  This failure to respond in an opposition brief to an argument put forward in Plaintiff's opening brief constitutes a waiver or abandonment in regard to the uncontested issue.  *Stichting Pensioenfonds ABP v. Country Fin'l Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) (collecting cases); *see Independent Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003).

With respect to the domain of interacting and relating with others (Domain 3), an ALJ considers how well the plaintiff can "initiate and sustain emotional connections with others, develop and use the language of [Plaintiff's] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i).  Here, the ALJ found no evidence of continuing serious problems in this domain and noted Plaintiff does activities with family members, has one friend at school, and likes to play basketball with friends in the neighborhood.  Tr. 852.  However, as asserted in Plaintiff's briefing, the ALJ failed to mention Plaintiff's tic disorder (Tr. 292) and use of inappropriate language (e.g. Tr. 597-598).  ECF No. 12 at 6-7.  Plaintiff described resulting difficulties as follows:

> In 2018, his sister refused to take him swimming anymore due to his loud and sexualized sounds, and his therapist noted his tics were affecting his daily life. Tr. 418. That year, he got a bus referral for uttering a curse when passing the driver. Tr. 410-12. In 2019, he was crying because other children had been questioning and making fun of him related to his tics. Tr. 461. He was disciplined 5 times at school between October and November 2019 for name-calling, disrespect, insubordination, hitting others, talking back, and being rude. Tr. 292.

ECF No. 12 at 6-7.  Defendant again fails to specifically contest Plaintiff's assertions.  *See Stichting Pensioenfonds ABP,* 802 F. Supp. 2d at 1132.

ORDER - 11

Furthermore, a greater limitation than "less than marked" in Domain 3 is supported by the 2019 report of Plaintiff's teacher, *see* Tr. 217 (finding "obvious" and "serious" problems in subsections of Domain 3), and the March 2024 report of Inclusion Specialist Johnson, Tr. 1211 (opining Plaintiff had a marked to extreme impairment in Domain 3).

In the domain of health and physical well-being (Domain 6), an ALJ considers "the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on your functioning." 20 C.F.R. § 416.926a(l). A claimant may be limited in health and physical well-being if he (1) has generalized symptoms, such as weakness, dizziness, agitation, lethargy, or psychomotor retardation because of his impairments; (2) has somatic complaints related to his impairments; (3) has limitations in physical functioning because of treatment; (4) has exacerbations from one impairment or a combination of impairments that interferes with his physical functioning; or (5) is medically fragile and needs intensive medical care to maintain his level of health and physical well-being. 20 C.F.R. § 416.926a(l)(4)(i)-(v).

Regarding the domain of health and physical well-being, the ALJ noted only that Plaintiff was obese but remained physically active. Tr. 852. As asserted by Plaintiff, and again ignored in Defendant's response brief, the ALJ did not consider that Plaintiff's obesity increased over time (weighing 265 lbs. by February 2024 with a BMI over the 99th percentile), Tr. 1382, and was linked to abnormal liver, cholesterol, and Vitamin D findings, Tr. 806-807. He also had a sleep study that revealed significant oxygen desaturations, Tr. 832, and struggled with headaches, Tr. 71 (his mother explained in 2021 that Plaintiff was experiencing nearly daily headaches). Again, a greater limitation in Domain 6 is also supported by the March 2024 report of Inclusion Specialist Johnson, Tr. 1212 (opining Plaintiff had a marked impairment in Domain 6, indicating Plaintiff reported a difference in his emotional regulation and physical well-being when on medication).

ORDER - 12

Substantial evidence does not support that ALJ's assessment of the functional domains in this case. As indicated above, the undersigned finds Defendant's failure to specifically contest Plaintiff's assertions with respect to the domains is a waiver or abandonment of these issues. In any event, the record reflects greater limitations than those assessed by the ALJ with respect to Domain 1, Domain 2, Domain 3, and Domain 6. Substantial evidence supports a determination that Plaintiff had a marked limitation in one or more of these domains, in addition to the ALJ's assessment of a marked limitation in Domain 5 (caring for oneself). Therefore, the Court finds the weight of the record evidence supports a conclusion that Plaintiff's impairments resulted in limitations that functionally equaled a listing. *See* 20 C.F.R. § 416.926a(d).

### 2. Lay Witness Evidence

Plaintiff contends the ALJ also erred by failing to properly assess the testimony of Plaintiff's mother and teachers. ECF No. 12 at 21-23.

An ALJ must consider the statement of lay witnesses in determining whether a claimant is disabled. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). "[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition." *Dodrill v. Shalala*, 12 F.3d 915, 918-919 (9th Cir. 1993). Such testimony cannot be disregarded without comment, and if a lay witness statement is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at 919). In a childhood disability case, "where the child is unable to adequately describe her symptoms, the Commissioner accepts the testimony of a person most familiar with the child's condition, such as a parent." *Smith ex rel. Enge v. Massanari*, 139 F.Supp.2d 1128, 1134 (9th Cir. 2001) *quoting Brown v. Callahan*, 120 F.3d 1133, 1135 (10th Cir. 1997). In the Ninth Circuit, the testimony of third parties, including parents of child claimants, is evaluated under the standard

applicable to lay witnesses. *See Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1086 (9th Cir. 2000) (citing *Dodrill*, 12 F.3d at 919; *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.").

The ALJ did not specifically address the statements of Plaintiff's mother, *see* Tr. 846-851, and completely fails to address the report of Inclusion Specialist Johnson. Although the ALJ did address the opinion of Plaintiff's sixth grade teacher, Tr. 854 (finding it unpersuasive), Plaintiff's briefing challenges this assessment and Defendant did not contest Plaintiff's assertion in this regard. *See Stichting Pensioenfonds ABP*, 802 F. Supp. 2d at 1132.

The ALJ erred by improperly assessing the opinions of these individuals.

### 3. Plaintiff's Subjective Complaints

Plaintiff additionally argues the ALJ erred by failing to provide clear and convincing reasons for discounting his subjective complaints. ECF No. 12 at 11-20. Defendant's response once again does not contest Plaintiff's assertion.

It is the province of the ALJ to make credibility determinations. *Andrews*, 53 F.3d at 1039. However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen*, 80 F.3d at 1281. "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's

///

complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), as amended (Apr. 9, 1996); *Dodrill*, 12 F.3d at 918.

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms; however, "the weight that can be given to the claimant's symptom reports is undermined for the reasons discussed throughout this decision." Tr. 846. The ALJ stated that "[i]nconsistencies undermine the weight that can be given to the claimant's symptom reports." Tr. 846. However, with respect to Plaintiff's credibility analysis, the ALJ merely evaluated the objective evidence and the persuasiveness accorded to certain opinions. Tr. 846-854. *See Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991) (finding that once a claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject the claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (holding an ALJ may not make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence"). Accordingly, the undersigned finds the ALJ again erred by failing to properly consider Plaintiff's subjective complaints.

**B.    Adult Disability**

   **1.    Opinion Evidence**

Plaintiff asserts the ALJ erred with regard to his assessment of the opinions of Jenifer Schultz, Ph.D., medical expert Peterson, and Dr. Worley as it pertains to Plaintiff's adult disability. ECF No. 12 at 25-27.

Plaintiff attained age 18 in December 2024, Tr. 838, an administrative hearing was held on February 20, 2025, Tr. 872-911, and the unfavorable decision was issued on March 10, 2025, Tr. 838-860. There is minimal evidence of Plaintiff's functioning since attaining age 18: only the testimony provided at the

ORDER - 15

administrative hearing and a consultative examination report dated February 12, 2025, Tr. 1944-1951.

As discussed by the ALJ, medical expert Peterson indicated that, aside from the changes resulting from Plaintiff's self-cessation of medication, the record indicated Plaintiff's condition had not significantly changed. Tr. 857. Dr. Schultz examined Plaintiff in February 2025 and found that Plaintiff's presentation was consistent with previous functioning based on the records provided. Tr. 1951. Neither the testimony of Dr. Peterson, nor the report of Dr. Schultz is particularly helpful in clarifying Plaintiff's functional abilities as an adult.

With respect to Dr. Worley, the ALJ determined that the opinions of Dr. Worley were limitedly informative of Plaintiff's condition after attaining age 18 and only somewhat unpersuasive because they lacked support as well as consistency with other evidence. Tr. 858. The ALJ did not explain how this conclusion was reached. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (the ALJ must set forth the reasoning behind his decisions in a way that allows for meaningful review).

Based on the dearth of meaningful evidence regarding Plaintiff's functioning as an adult, the undersigned finds that additional evidence is necessary for an adequate review of Plaintiff's adult functioning. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (an ALJ's duty to develop the record is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence). The record before the ALJ is ambiguous, at best, and plainly inadequate to allow for a proper evaluation of the evidence pertaining to Plaintiff's functioning as an adult. Therefore, the ALJ shall be directed to further develop the record by requiring Plaintiff to undergo a new consultative psychological examination prior to a new administrative hearing and, if warranted, by eliciting medical expert testimony to assist the ALJ in formulating a new RFC determination.

ORDER - 16

### 2. Plaintiff's Subjective Complaints

Plaintiff contends the ALJ also erred by failing to provide clear and convincing reasons for discounting his adult symptom testimony. ECF No. 12 at 20-21. As before, Defendant does not contest Plaintiff's adult credibility assertion.

With respect to Plaintiff's adult symptom testimony, the ALJ's decision is identical: Plaintiff's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms; however, "the weight that can be given to the claimant's symptom reports is undermined for the reasons discussed throughout this decision." Tr. 857. However, the ALJ erred by failing to provide any reasoning for the rejection of Plaintiff's adult symptom testimony. Accordingly, on remand, the ALJ shall also reconsider Plaintiff's statements and testimony and reassess what statements, if any, are not credible and, if deemed not credible, what specific evidence undermines those statements.

### 3. Training-Period Caveat

Plaintiff asserts the ALJ erred by failing to conduct an adequate analysis at step five of the sequential evaluation process. ECF No. 12 at 2-3.

Plaintiff, citing *Leitz v. Kijakazi*, 2023 WL 4342114 at *2 (9th Cir. July 5, 2023),[1] argues that the ALJ's limitation of Plaintiff to occasional interaction with coworkers and supervisors bars all job training and, consequently, precludes

---

[1] In *Leitz*, the ALJ held that the claimant "can have brief, superficial interaction with co-workers and the public; and can have occasional interaction with supervisors (although additional time for training is acceptable)." *Leitz*, 2023 WL 4342114 at *2. The Ninth Circuit determined that the "training-period caveat" was not supported by the record, and that there was no evidence that the claimant's mental problems were "somehow alleviated during training periods because they are less likely to include supervisor interactions than other work periods, or that employers would be willing to tolerate her limitations during training periods." *Id.*

ORDER - 17

competitive employment.  ECF No. 12 at 2-3 (asserting Plaintiff is unlikely to survive the early period after hiring); ECF No. 18 at 2-4 (arguing Plaintiff would not survive training).  The undersigned does not agree with the proposition that a limitation to occasional interaction with supervisors is *per se* disabling.  *See Justin P. v. O'Malley*, 2024 WL 1559545 at *7-8 (E.D. Wash. April 10, 2024) (the Court applied *Leitz* and determined that the ALJ did not err).  Nevertheless, to address Plaintiff's concern, the ALJ on remand will be instructed to obtain supplemental vocational expert testimony to specifically address whether an RFC limiting Plaintiff to occasional interaction with supervisors during the training period would preclude any identified jobs.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is not supported by substantial evidence and not free of harmful error.  The Court has the discretion to remand the case for additional evidence and findings or to award benefits.  *Smolen*, 80 F.3d at 1292.  The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose.  *Id*.  Remand is appropriate when additional administrative proceedings could remedy defects.  *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).  For the reasons discussed above, the undersigned finds the record is adequate for a proper determination to be made with respect to Plaintiff's childhood disability claim but further development is necessary as to Plaintiff's adult disability claim.

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's motion to reverse and remand for an immediate award of benefits, **ECF No. 12**, is **GRANTED IN PART**.

2. Defendant's motion to reverse and remand for additional proceedings, **ECF No. 17**, is **DENIED**.

///

3. The matter is **REVERSED AND REMANDED** to the Commissioner for an immediate calculation of benefits with respect to Plaintiff's childhood disability claim.

4. The matter is **REVERSED AND REMANDED** to the Commissioner for additional proceedings with respect to Plaintiff's adult disability claim. On remand, the ALJ shall (a) reexamine Plaintiff's statements and testimony; (b) reassess Plaintiff's RFC, taking into consideration the opinions of Drs. Peterson, Worley and Schulz, and all other medical evidence of record relevant to Plaintiff's adult disability claim; (c) develop the record further by requiring Plaintiff to undergo a new consultative psychological examination prior to a new administrative hearing and, if warranted, by eliciting medical expert testimony to assist the ALJ in formulating a new RFC determination; (d) obtain supplemental testimony from a vocational expert and specifically address with the vocational expert whether an RFC limiting Plaintiff to occasional interaction with supervisors during the training period would preclude any identified jobs; and (e) take into consideration any other evidence or testimony relevant to Plaintiff's adult disability claim.

5. An application for attorney fees may be filed by separate motion.

**IT IS SO ORDERED**. The District Court Executive shall file this Order and provide copies to counsel. **Judgment shall be entered for Plaintiff and the file shall be CLOSED**.

DATED December 16, 2025.



_____
ALEXANDER C. EKSTROM
UNITED STATES MAGISTRATE JUDGE

ORDER - 19